FILED
United States Court of Appeals
Tenth Circuit

July 7, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BRIAN BAINBRIDGE,

        Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant - Appellee.

No. 14-1409
(D.C. No. 1:13-CV-01698-MEH)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **PHILLIPS**, Circuit Judges.

Brian Bainbridge appeals from an order of the district court affirming the

Commissioner's decision denying his application for disability insurance benefits.

Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Bainbridge alleged he was unable to work since November 29, 2009, due to back pain, chronic bronchitis, asthma, lung inflammation, and narrowing of the esophagus, trachea, and larynx. An administrative law judge (ALJ) held a hearing and took testimony from Bainbridge, his wife, and a vocational expert (VE). The ALJ found that although Bainbridge suffered from several severe impairments (chronic bronchitis, asthma/chronic obstructive pulmonary disease, low back pain due to mild degenerative disc disease, and obstructive sleep apnea), none of them, separately or in combination, met or equaled a disabling impairment described in the Listings, 20 C.F.R. Pt. 404, Subpt. P, App. 1. Based on the medical evidence and a finding that Bainbridge was not fully credible regarding the limiting effects of his symptoms, the ALJ determined that Bainbridge retained the residual functional capacity (RFC) to perform sedentary work, provided he could sit or stand alternatively at will without being off-task more than 10% of the work period. The ALJ also found a number of other physical limitations, but only one is relevant to this appeal—the need to avoid even moderate exposure to weather and extreme temperatures.

Given this RFC, the ALJ found that Bainbridge could not perform any of his past relevant work as a correctional officer, heavy-equipment driver, or lubrication technician. However, at step five of the controlling five-step sequential analysis set out in 20 C.F.R. § 404.1520(a)(4), the ALJ determined that he could perform several

- 2 -

other jobs that exist in significant numbers in the national economy: surveillance system monitor, cutter/paster, and document preparer. Accordingly, the ALJ denied benefits. Bainbridge submitted additional medical evidence (two opinions from a treating physician) in support of his appeal to the Appeals Council. The Council considered that evidence but determined it would not change the outcome and denied review. The district court affirmed.

## II.    DISCUSSION

Bainbridge challenges the ALJ's adverse credibility finding, her rejection of an opinion from one of his treating physicians in favor of an opinion from another, and the accuracy of the dispositive hypothetical she posed to the VE. Our task is limited to determining whether substantial evidence supports the ALJ's factual findings and whether she applied the correct legal standards. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

### A.  Credibility finding

The ALJ gave a number of reasons for finding Bainbridge not fully credible regarding the limiting effects of his symptoms: He had been conservatively treated for minimal respiratory impairments. He was significantly noncompliant with prescribed treatments. He was uncooperative or made poor efforts in performing diagnostic tests. He had consistently unremarkable physical examinations and test results. One treating-physician thought he could return to work and another

commented that he might be motivated by secondary gain.  He was vague in describing his symptoms and the factors that trigger them.  And his activities of daily living (ADLs) were inconsistent with a disability.  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

Bainbridge challenges the ALJ's credibility finding in several ways but largely ignores her reliance on the lack of supporting objective medical evidence.  He first claims the ALJ erred in stating her lay opinion that an oximetry test performed in July 2010 failed to "note any serious or disabling impairments."  Aplt. App. at 25. Bainbridge argues that the report shows the test could not be performed because he was coughing and could not hold his breath.  In fact, the report states that, because of the coughing, the results were the "best obtainable," and that Bainbridge could not do a "DLCO maneuver due to cough—could not maintain breath hold."  *Id.* at 345. Further, as the Commissioner notes, the report showed Bainbridge had oxygen saturation levels of 93% on room air, and the Mayo Clinic indicates that normal oxygen saturation levels are between 95% and 100%, while those below 90% are considered low.[1]  Hence, the ALJ's statement that the report did not show any serious

---

[1]    *See* Mayo Clinic*,* Hypoxemia (low blood oxygen), *available at* http://mayoclinic.org/symptoms/hypoxemia/basics/definition/sym-20050930 (last visited June 19, 2015).

or disabling impairment was accurate, and we see no error in her reliance on the report in support of her adverse credibility finding.

Bainbridge next argues that the ALJ erred in finding he was treated conservatively when he was seen 28 times in less than two years and, during that interval, had a number of pulmonary-function and diagnostic tests (two bronchoscopies, a laryngoscopy, an esophagogastrodudenoscopy, an x-ray of his esophagus, and two sleep studies). But frequency says little about intensity of treatment, and his treatment amounted to a variety of prescription drugs, including a nebulizer; a continuous positive airway pressure (CPAP) machine for nighttime use; rest; physical therapy; and a recommendation for speech therapy. We therefore see no error in the ALJ's characterization of the treatment for his respiratory ailments as conservative.[2]

Bainbridge also questions the accuracy of the ALJ's statement that he was largely noncompliant with his prescribed CPAP machine. He points to a treatment note where he reported that he tried to get acclimated to the machine by using it during the day but woke up gasping when he wore it at night. He also notes that Dr. Christopher Bates, a pulmonary specialist with whom he had the most extensive treating relationship, reported in May 2010 that Bainbridge wore the machine for four or five hours each night he used it. Although all that is true enough, Bainbridge

---

[2]     The ALJ separately found that Bainbridge was treated conservatively for his lower back pain, and he has not challenged that finding.

overlooks that the ALJ also relied on later reports from Dr. Bates (July and September 2010, and January 2011) stating that Bainbridge was not using the CPAP machine at all. The ALJ did not err in relying on his failure to use the CPAP machine in support of her adverse credibility finding. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (explaining that ALJ may rely on claimant's attempts to relieve pain as part of credibility determination).

Bainbridge's final challenge to the ALJ's credibility finding concerns her reliance on his ADLs. Those activities included doing "errands and light housework some days," preparing "meals weekly," having "no problems with personal care," watering plants, loading and unloading the dishwasher, hanging up clothes, going outside daily, driving, watching television, riding "a bike about once a week per his doctor's request," walking half a mile a day, sometimes making meals, "shopping twice a week," helping with his son's homeschooling, vacuuming, mopping, driving, using a computer one or two hours a day, and socializing with friends. Aplt. App. at 28.[3] Pointing to the rule that "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987), he contends that his ability to

---

[3] In addition to stating that Bainbridge shopped twice a week, the ALJ also recited that he "shops monthly." Aplt. App. at 28. The reference to shopping monthly was apparently based on a statement in his benefits application, *see id.* at 203, but at his hearing he said he went to the store "[a] couple of times a week," *id.* at 69.

perform some ADLs on his good days is not inconsistent with his claim of needing help from his wife and children on bad days.

We see no error. The ALJ did not rely on Bainbridge's ADLs to establish that he could work or as the sole basis for finding him not fully credible. Instead, the ALJ used them as one part of her adverse credibility finding, as the Commissioner's regulations require and our case law recognizes. *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating that an ALJ is to consider ADLs as part of credibility evaluation); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (considering ALJ's reliance on ADLs as permissible part of substantial evidence supporting credibility evaluation). The ALJ was entitled to base her adverse credibility finding, in part, on his performance of these activities, so the ALJ did not violate *Frey*. Furthermore, the other reasons the ALJ gave for not fully believing Bainbridge, most pertinently the lack of supporting medical evidence and the suggestion that he might be motivated by secondary gain, support the ALJ's implicit finding that he was not fully credible regarding his need for help on bad days. *See* 20 C.F.R. § 404.1529(c)(2) (stating that objective medical evidence is "useful indicator" of intensity and persistence of symptoms); *Diaz*, 898 F.2d at 777 (approving ALJ's reliance, for credibility purposes, on consulting physician's suspicion that claimant was "'malingering'").

**B. Physician opinions**

Bainbridge contends that the ALJ inadequately explained why she afforded some weight to Dr. Craig Shapiro's opinion that Bainbridge "may return to work,"

- 7 -

Aplt. App. at 252, and no weight to Dr. Bates's later request, in an open to-whom-it-may-concern letter, that Bainbridge "be considered for disability," *id.* at 381. We disagree.

Like Dr. Bates, Dr. Shapiro is a pulmonary specialist. Dr. Shapiro examined Bainbridge in January 2010, finding "symmetrical breath sounds" and a bilaterally clear chest. *Id.* at 257. He thought Bainbridge's persistent cough was "multifactorial, including GE reflux disease, asthma, and postnasal drainage." *Id.* He referred Bainbridge for a bronchoscopy. His review of that test revealed "significant moderate airway inflammation and upper airway edema . . . consistent with acid reflux," and "acute tracheobronchitis." *Id.* at 252. Dr. Shapiro noted that Bainbridge had been on a prescription stomach-acid reducer for two weeks, gave him two weeks of Augmentin (an antibiotic), and instructed him to continue "nebulized therapy." *Id.* Dr. Shapiro opined that "within four more weeks [Bainbridge] should feel better" and that he "may return to work." *Id.*

The ALJ considered Dr. Shapiro's opinion that Bainbridge could return to work somewhat vague because he did not make clear whether he meant a return to past work or to any substantial gainful activity (i.e., a step-five finding). Despite that, the ALJ gave it "some weight" because she "agree[d] the claimant was not suffering from any disabling limitations." *Id.* at 28. Bainbridge takes issue with this statement, arguing that the ALJ gave Dr. Shapiro's opinion some weight because it aligned with her lay opinion, in violation of *McGoffin v. Barnhart*, where we stated

that an ALJ "'may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to [the ALJ's] own credibility judgments, speculation, or lay opinion,'" 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis omitted) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). But Bainbridge overlooks the ALJ's next sentences: "As discussed, the medical evidence of record does not support the existence of any disabling impairments during the alleged period of disability. Dr. Shapiro also had a treatment relationship with [Bainbridge]. I therefore give this opinion some weight." Aplt. App. at 28-29. Viewed in context, the ALJ's agreement with Dr. Shapiro that Bainbridge was not disabled is most naturally read as a conclusion that Dr. Shapiro's opinion was consistent with the objective medical evidence and the ALJ's conclusion that the objective medical evidence did not support a finding of disability. The ALJ did not err with regard to Dr. Shapiro's opinion.

Bainbridge also argues that the ALJ's rejection of Dr. Bates's request that he be considered for disability violated *McGoffin* because her analysis is "essentially conjecture." Aplt. Opening Br. at 36. We disagree. As she was required to do, the ALJ provided "specific, legitimate" reasons for affording no weight to Dr. Bates's opinion. A treating physician's opinion is not entitled to controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," but such an opinion is "still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. § 404.1527." *Watkins v. Barnhart*,

- 9 -

350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2P, 1996 WL 374188, at *2, *4).  The § 404.1527 factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted).

The ALJ reasoned that the medical evidence did not support Dr. Bates's opinion.  She pointed out that although Dr. Bates referred in his letter to the fact that an "airway biopsy" documented Bainbridge's "chronic respiratory condition characterized by chronic airway inflammatory change," Aplt. App. at 381, his own treatment notes consistently showed normal physical exams and contained statements and diagnoses that did not square with his opinion that Bainbridge should be put on disability.  The ALJ referred to a number of those statements:  "believe[d]" his "[i]nflammatory airway disease [was] under control," *id.* at 371 (September 2010); there was "no good explanation for [his fatigue] and he is never bad off when I see him . . . not sure if there are secondary gain issues going on or am I just missing something" *id.* at 367 (November 2010); "[e]ach time I see him he appears healthy," *id.* at 388 (January 2011); and he has "asthma, mild persistent," *id.* at 398 (April 2011).  Hence, the ALJ reasonably concluded that Dr. Bates's own medical records did not support his opinion that Bainbridge was disabled.

The ALJ recognized that both Dr. Bates and Dr. Shapiro had a treating relationship with Bainbridge, and both reviewed diagnostic test results.[4]  Although the ALJ did not note that Bainbridge saw Dr. Bates six or seven times and Dr. Shapiro only twice, we find that omission inconsequential in light of the other factors supporting the ALJ's rejection of Dr. Bates's opinion.  In particular, the ALJ found that the opinion was not supported by the other medical evidence and was inconsistent with the record as a whole, including the opinions of three other doctors, including Dr. Shapiro, that Bainbridge did not have disabling impairments.

In addition, the ALJ considered Dr. Bates's opinion "vague and conclusory" because it was "not based on a function-by-function analysis of what [Bainbridge] is capable of doing despite his impairments" and did not specify whether Bainbridge was unable to perform his past work or any substantial gainful activity at all.  *Id.* at 30.  Although Dr. Shapiro's opinion suffered from these same shortcomings, the ALJ's decision to reject Dr. Bates's opinion and afford some—but not controlling—weight to Dr. Shapiro's contrary opinion was permissible because the other factors weighed against Dr. Bates's opinion but not against Dr. Shapiro's opinion.

The ALJ also reasoned that, although difficult to confirm, the likelihood a treating physician provides a disability note out of sympathy for a patient or in response to the patient's insistent demands for one is greater where, as here, the opinion "departs substantially from the rest of the evidence of record."  *Id.*  An

---

[4]    We note that both were pulmonary specialists.

assertion that a treating physician "naturally advocates his patient's cause" is not a good reason "to reject [his] opinion" unless the ALJ "suggest[s] some exceptional basis in the facts of [the] case." *Frey*, 816 F.2d at 515. Here, the ALJ suggested an exceptional basis—that Dr. Bates's opinion was markedly at odds with the rest of the medical evidence, including his own treatment notes. But even if this reason was improper, the other reasons the ALJ gave were more than sufficient for rejecting Dr. Bates's opinion.

### C. Hypothetical to the VE

Bainbridge's final argument is that the dispositive hypothetical question the ALJ posed to the VE (which mirrored the ALJ's RFC finding) should have included (1) a limitation regarding exposure to air conditioning and (2) a restriction to only occasional reaching and handling. When Bainbridge's attorney posed these additional limitations to the VE at the hearing, the VE said a person limited to sedentary, unskilled jobs such as those the ALJ ultimately relied on for her step-five finding (again, cutter/paster, document preparer, and surveillance system monitor) would have no ability to adjust air conditioning or to move further away from a vent. The VE also said that the manipulative limitations would exclude the cutter/paster and document-preparer jobs but not surveillance system monitor.

If a hypothetical question does not precisely relate all of a claimant's impairments, the testimony it elicits cannot be considered substantial evidence in support of an ALJ's decision. *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.

1991).  However, a hypothetical question must contain "only . . . those impairments borne out by the evidentiary record."  *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).  Here, the only evidence that air conditioning aggravated Bainbridge's respiratory symptoms is the testimony he and his wife gave at the hearing and a note from Dr. Bates, dated after the ALJ's decision and submitted to the Appeals Council, stating that the symptoms of Bainbridge's respiratory condition, which had "been present since early 2010," are "worse in cool, dry environments" and therefore "it would be extremely difficult for him to perform any type of job in an air conditioned environment without making this condition worse."  Aplt. App. at 437.[5]  Bainbridge twice reported that "cold air" or "cold weather" triggered his cough.  *Id.* at 305 (reporting "cold air" to Dr. Bates); *id.* at 350 (reporting "cold weather" to a consulting examiner).  But there are no record references to Bainbridge complaining that air conditioning—as opposed to the vague references to "cold air" or "cold weather," each of which suggests something more extreme than the level of coolness typically associated with air conditioning—aggravated his condition.  Nor did any medical source except Dr. Bates opine that he should not be exposed to air conditioning.  Further, the hypothetical asked the VE to assume a person who must avoid "even moderate exposure to non-weather related extreme temperatures of both cold and heat," *id.* at 96, which appears reasonably calculated to accommodate the

---

[5]     Because the Appeals Council considered Dr. Bates's post-decision letter but concluded it did not affect the outcome, we examine it as part of the record. *See Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006).

- 13 -

limited credence the ALJ gave to Bainbridge's testimony about his need to avoid air conditioning. Accordingly, we see no error in omitting a specific air-conditioning restriction from the dispositive hypothetical.

We need not resolve whether the ALJ should have included the additional manipulative limitations because, even if she should have, the error was harmless. We may hold an ALJ's error harmless "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The VE testified that the additional manipulative limitations would not preclude work as a surveillance system monitor and stated that there were 20,000 such jobs in Colorado and 500,000 such jobs nationally. The relevant test in a disability case is whether there is a significant number of jobs in the regional *or* national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009). Excluding the cutter/paster and document-preparer jobs leaves 500,000 surveillance-system-monitor jobs in the national economy. Any reasonable trier of fact would be compelled to conclude that 500,000 is a significant number of jobs for purposes of a step-five determination. *See id.* at 1274 (recognizing that this court has considered 152,000 jobs in the national economy to be legally significant).

## III.  CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge