FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 14, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARTY GROBERG,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, in his capacity
as Commissioner of the Social Security
Administration,

Defendant-Appellee.

No. 11-4173
(D.C. No. 1:08-CV-00159-DAK)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**BALDOCK**, Circuit Judge.

"The Equal Access to Justice Act [(EAJA), 28 U.S.C. § 2412(d)] provides for

the award of fees and expenses to the prevailing party in a civil action against the

Federal Government, unless the position of the United States was substantially

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

justified." *Harris v. R.R. Ret. Bd.*, 990 F.2d 519, 520 (10th Cir. 1993) (internal quotation marks omitted). After successfully appealing the denial of his application for Social Security disability and Supplemental Security Income (SSI) benefits, *see Groberg v. Astrue*, 415 F. App'x 65, 73 (10th Cir. 2011), Mr. Groberg sought an award of EAJA fees in district court. The district court denied the request, finding that although Mr. Groberg had prevailed in his appeal to this court, the Commissioner of Social Security (Commissioner) had demonstrated that his position was substantially justified. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand with instructions to award Mr. Groberg an appropriate EAJA fee.

## BACKGROUND

In his applications for disability and SSI benefits, Mr. Groberg alleged that he had become disabled on May 22, 2002, due to chronic low back pain, degenerative joint disease in both knees, severe asthma, depression, and anxiety. After the agency denied his applications initially and on reconsideration, he received a hearing before an administrative law judge (ALJ). The ALJ determined that Mr. Groberg's residual functional capacity (RFC) limited him to sedentary work, with certain physical restrictions. The ALJ did not include any mental restrictions.

Given this RFC and Mr. Groberg's age, education, and work experience, the ALJ further determined that although he could not return to his past relevant work, there were a significant number of jobs that he could perform in the national

economy.  He was therefore not disabled within the meaning of the Social Security Act.

The Appeals Council affirmed the denial of benefits.  Mr. Groberg then filed an action in federal district court seeking review of the Commissioner's decision.  He raised the following issues:  (1) the ALJ erred in failing to find Mr. Groberg's depression, anxiety disorder, and panic disorder to be severe impairments; (2) the ALJ erred in not finding him disabled under Listing 1.04A for disorders of the spine; (3) the ALJ erred in finding that the opinions of many of his treatment providers should be afforded "no weight"; and (4) the ALJ erred in finding that Mr. Groberg retained the RFC to perform the jobs that the vocational expert (VE) had identified at the hearing.  The district court affirmed the Commissioner's decision.

Mr. Groberg then appealed to this court, raising essentially the same issues he had presented in the district court.  A panel of this court found merit in two of his arguments:  that the ALJ had failed to properly evaluate the effect of his mental impairments on his ability to work, and that the ALJ had failed to properly analyze the evidence concerning whether Mr. Groberg's spinal impairment met a Listing.  The merits panel determined that an immediate award of benefits was appropriate.  The panel stated:

> It has been over five years since [Mr.] Groberg first applied for supplemental security income and disability benefits.  There is nothing to be gained from prolonging the proceedings any further.  According to the ALJ's own RFC analysis, [Mr.] Groberg is extremely limited in terms of his physical capacities.  Notwithstanding the ALJ's tendency to avoid the issue by misstating the evidence, the medical evidence points

to a correspondingly debilitating set of mental impairments. The VE testified that [Mr.] Groberg could not do even the few identified jobs if mental difficulties caused him to miss more than two days of work per month, or if he were mentally "off task" more than ten percent of the time. Given a proper analysis and evaluation of his mental impairments, there is no reasonable probability that [Mr.] Groberg would be denied benefits.

*Groberg*, 415 F. App'x at 73 (record citation omitted).

Mr. Groberg's counsel thereafter applied to the district court for an award of EAJA fees. The district court denied the application. It concluded:

The Tenth Circuit's decision . . . merely demonstrates that reasonable persons could disagree as to which sources to rely upon and what weight to give to the medical sources and treatment records. The ALJ in this case provided a lengthy and detailed assessment of the evidence and sources. Moreover, while the ALJ could have more fully discussed whether Plaintiff's condition met or equaled a listed impairment, it appeared to this court to be adequate under Tenth Circuit precedent. The court concludes that the government was substantially justified both in law and fact in defending the ALJ's decision.

Aplt. App., Vol. I at 89-90.

## ANALYSIS

To obtain an EAJA fee award, the claimant must be a prevailing party who incurred fees in an action by or against the United States. 28 U.S.C. § 2412(d)(1)(A). Mr. Groberg satisfied this requirement by obtaining a remand from this court for an award of benefits. The government can defeat an EAJA claim, however, by showing that its position was substantially justified. *See id.*; *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (stating government bears burden of showing its position was substantially justified).

- 4 -

An agency position is substantially justified for purposes of the EAJA if it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). In other words, the government's position must have had a "reasonable basis both in law and fact." *Id.* (internal quotation marks omitted); *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995).

"'[P]osition of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). This means that EAJA fees generally should be awarded if the ALJ's reasons for denying benefits were unreasonable, "even if the government [subsequently] advanced a reasonable litigation position." *Hackett*, 475 F.3d at 1174 (internal quotation marks omitted). "This is only the general rule, however[.]" *Id.* Even when the ALJ's reasons were unreasonable, EAJA fees may still be denied when the Commissioner reasonably (even if unsuccessfully) argues in litigation that the ALJ's errors were harmless.[1]

---

[1]    By "harmless error" we mean only a "true" harmless error argument—that the ALJ's errors do not require reversal because other reasoning already contained explicitly or implicitly in his decision supplied sufficient grounds for affirmance notwithstanding the error, *see, e.g., Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005), or because "we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved [a] factual matter in any other way," *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). We do not consider an entirely new rationale for affirmance on grounds different from those previously considered by the ALJ to be a true harmless error argument. *See Hackett*, 475 F.3d at 1174-75 (rejecting, in light of *SEC v. Chenery Corp.*, 332 U.S. 194, 196

(continued)

*See Johns v. Astrue*, 455 F. App'x 846, 848 (10th Cir. 2011); c*f. Fleming v. Barnhart*, 194 F. App'x 543, 546 (10th Cir. 2006) (predating *Hackett*) (finding no abuse of discretion in denial of EAJA fee where "the district court declined the Commissioner's invitation, under a harmless error analysis, to supply . . . missing RFC findings regarding standing and walking . . . [but] found the government's position to be substantially justified . . . not because the [ALJ's] error was harmless, but because it was not unreasonable under the circumstances of this case to argue that it was harmless").[2]

We review the district court's determination that the government's position was substantially justified for an abuse of discretion. *Pierce*, 487 U.S. at 559; *Gilbert*, 45 F.3d at 1394. "A district court abuses its discretion when it commits an error of law or makes clearly erroneous factual findings." *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1252 (10th Cir. 2006). "The issue of whether the district court relied on the correct legal standard in applying the EAJA, however, is a matter of law which we review *de novo*." *Hadden v. Bowen*, 851 F.2d 1266, 1268 (10th Cir. 1988).

---

(1947), Commissioner's assertion of "entirely new legal theories" on appeal in attempt to justify ALJ's failure to satisfy his step-five duties).

[2] Although these cases are unpublished and therefore not precedential, we cite them for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A).

**1.  Mental Impairment Issue**

**A.  ALJ's Findings**

The merits panel found numerous serious errors in the ALJ's analysis of

Mr. Groberg's mental impairments.  It made the following observations concerning

the ALJ's evaluation of the evidence:

> The ALJ's evaluation of the medical evidence concerning
> [Mr.] Groberg's mental impairments was seriously deficient and
> his analysis of them was therefore unsupported by substantial
> evidence.  According to the extensive medical evidence in the record,
> [Mr.] Groberg has a long history of anxiety (including agoraphobia and
> panic attacks) and depression, secondary to abuse as a child.  He may
> also be suffering from a personality disorder.  There is also indication
> that he has a history of bipolar disorder.  He has been hospitalized for
> depression in the past.

*Groberg*, 415 F. App'x at 67-68.  The merits panel continued by enumerating the

ALJ's several "unsupported findings" leading him to conclude "that [Mr.] Groberg's

mental impairments posed *no* limitation on his ability to work."  *Id.* at 68.

First, although the ALJ stated that records from April to December 2006

showed minimal or no mental symptomology, in fact, "the medical records reflect

serious symptomology throughout this period."  *Id.*

Second, the ALJ concluded that "with few exceptions, [Mr.] Groberg's mental

symptoms have consistently been described as being of only minor severity."  *Id.*

(brackets and internal quotation marks omitted).  The panel disagreed, noting that the

ALJ had reached this conclusion by "impermissibly pick[ing] and cho[osing] portions

of the medical record favorable to his interpretation, while ignoring less favorable evidence." *Id.*

Third, the panel disputed the ALJ's interpretation of a GAF score of 51 assigned to Mr. Groberg by a treating source.  The ALJ had opined that this score indicated only a mild restriction in his ability to perform work activities.  As the panel pointed out, however, a score of 51 indicates moderate, not mild, restrictions.  Furthermore, the score was at the bottom of the 51-to-60 range.  Also, the panel took issue with the ALJ's use of the GAF score in isolation, given that notes from the same treatment session that produced it showed that Mr. Groberg was suffering from significant mental problems.

Fourth, the ALJ had stated that this source's conclusion that Mr. Groberg's symptoms were only mild was "reiterated . . . a few weeks later by two additional treating sources." *Id.* at 69 (internal quotation marks omitted).  But the panel noted that "[t]he two reports he cited do not support this conclusion." *Id.*

Fifth, the panel observed that "[t]he ALJ's chronological assessment of [Mr.] Groberg's mental symptoms demonstrates a lack of familiarity with the record." *Id.* at 70.  The ALJ "claimed that in April 2006 [Mr.] Groberg alleged for the first time that he suffered from panic attacks while in crowds." *Id.*  The panel cited several earlier references in the record to Mr. Groberg's panic disorder.

Sixth, the panel described the ALJ's analysis of Mr. Groberg's treating physicians and other providers of mental health treatment as "erratic and

result-oriented." *Id.* "The ALJ picked and chose among their opinions, apparently based solely on whether they had presented data that he could use to support his opinion that [Mr.] Groberg's mental impairments . . . would create no restriction at all for purposes of his RFC." *Id.* The panel noted that the ALJ had assigned no weight to five of his treating medical sources. The ALJ had "noted in each case that these sources were non-acceptable medical sources rather than licensed physicians." *Id.* But the ALJ then gave great weight to the opinion of examining social worker Sylvia Eyre, whom the ALJ also considered a "non-acceptable medical source." *Id.*

Moreover, "[t]he only virtue of Ms. Eyre's opinion that the ALJ mentioned was her conclusion that [Mr.] Groberg's GAF score was 50, which [the ALJ] found consistent with the other medical evidence." *Id.* But this analysis was faulty, because "[a] score of 50 lies within the 41-to-50 range, which indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." *Id.* at 70-71 (internal quotation marks omitted). "Thus, even the opinion of Ms. Eyre demonstrate[d] that [Mr.] Groberg's mental impairments were serious and likely to have some effect on his ability to work." *Id.* at 71.

Seventh, the panel addressed the ALJ's decision to give controlling weight to the opinions of Angela Keane.[3] It noted that her only specific finding that the ALJ

---

[3] The merits panel appears to have made two ultimately inconsequential errors concerning Ms. Keane. First, the Commissioner now notes she was not a physician;

(continued)

cited was her conclusion that Mr. Groberg had a GAF score of 51. This low score

was consistent with Ms. Keane's other treatment records, but inconsistent with the

ALJ's conclusion that Mr. Groberg had no serious mental impairment. The panel

cited later records from this source, which indicated that "[t]hings had taken a turn

for the worse." *Id.* at 71. At that point, Mr. Groberg

> reported dysphoric mood with suicidal ideation, but stated "I would
> never do it because of my dog. He's more than a dog, he's my best
> friend." Groberg reported difficulties with going to the store or
> accessing public transportation: "I get so nervous with my heart
> pounding and sweating that I just can't deal with it." He had
> experienced weight loss and increased social isolation over a period of
> several months and [Ms. Keane/Krahulec] noted that he "[a]ppears to be
> experiencing panic with agoraphobia as well." His symptoms were
> sufficiently serious that she ordered a thyroid study to rule out a
> physically based problem.

*Id.* (brackets and citations omitted).

These many, serious deficiencies show the ALJ's decision concerning

Mr. Groberg's mental impairments, together with the resulting denial of benefits, was

not substantially justified. Our review of the district court's EAJA decision must

also address whether this case is exceptional because the Commissioner's litigation

---

she was an "advanced practice registered nurse." Aplee. Br. at 7. (The ALJ referred
to her as a "treating physician" in his decision. *See* Aplt. App., Vol. II at 22.) The
merits panel also referred to her as an "MD/APRN." *Groberg*, 415 F. App'x at 71.
This designation appears in the record. *See, e.g.*, Aplt. App., Vol. II at 130, 214.
Second, contrary to the panel's assumption, she was *the same person* as "Angela L.
Krahulec," not a separate treatment provider. During the course of her treatment
relationship with Mr. Groberg, Ms. Keane had changed her last name to Krahulec.
*See* Aplee. Br. at 14 n.4. If anything, correction of these errors strengthens the
panel's critical analysis.

position "cure[d] unreasonable agency action." *Hackett*, 475 F.3d at 1174 (internal quotation marks omitted). We turn to that question next and conclude it did not.

### B. Commissioner's Litigation Position

In the district court, Mr. Groberg presented three arguments pertaining to his mental impairments. First, he complained that the ALJ failed to treat his mental impairments as "severe impairments" at step two of the five-step analysis. In response, the Commissioner noted that any error concerning mental impairments at step two was harmless because the ALJ's only duty at step two is to determine whether *some* serious impairment exists, thus requiring further analysis of the remaining steps. The merits panel agreed. *Groberg*, 415 F. App'x at 67. This argument, in itself, was thus not an unreasonable litigation position. But the ALJ's error in minimizing the effect of Mr. Groberg's mental impairments on his ability to work clearly affected his analysis at the ensuing steps of the analysis.

The merits panel combined its discussion of Mr. Groberg's second and third arguments. In his second argument, Mr. Groberg complained that the ALJ erred by finding that the opinions of many of his health care providers should be accorded no weight. The merits panel's concerns were that (1) the ALJ completely rejected, often for unsupportable reasons, many opinions whose consensus was that Mr. Groberg "had serious mental impairments and needed treatment," in favor of his own opinion that Mr. Groberg had no such problems; and (2) he assigned great weight to portions of other opinions that fit his analysis, giving his overall analysis an "erratic and

results-oriented" tone. *Id.* at 70. In light of the merits panel's critique of the ALJ's analysis of the medical evidence, the Commissioner's arguments in favor of the ALJ's decision on this point, *see* Aplee. Rev. Supp. App. at 74-78, were not substantially justified.

Mr. Groberg's second argument dovetailed closely with the third and most important of his arguments about his mental impairments. He contended that the ALJ should have found he lacked the RFC to perform sedentary work due to his mental impairments. *See id.* at 42. In a single paragraph, the Commissioner made the following arguments: (1) Mr. Groberg failed to "discuss in detail any particular limitations that should have been included" in the RFC; and (2) "the evidence supported the ALJ's conclusion that [Mr. Groberg's] mental ailments were well controlled on medication such that they did not impose functional limitations." *Id.* at 78.

With regard to the Commissioner's first responsive argument, Mr. Groberg contended that the ALJ should have included or at least discussed mental limitations involving his "ability to understand, carry out or remember instructions; the ability to respond appropriately to supervision and relate to supervisors and co-workers; and, the ability to tolerate work pressures in a work setting." *Id.* at 42. Although Mr. Groberg did not quantify the particular restrictions his mental impairments posed for his ability to work, his point was that the ALJ *had imposed no limitation at all*,

despite abundant medical evidence to the contrary.  The Commissioner's argument therefore failed to show that the ALJ's error was harmless.

The Commissioner's second responsive argument appears to be based on a single reference in the ALJ's decision:  "[I]n August 2007, . . . Angela L. Krahulec . . . observed that Mr. Groberg's depression and anxiety were adequately controlled with medication, eradicating all symptoms of both conditions (*see* Exhibit 20F, p. 4)."  Aplt. App., Vol. II at 18.  These observations were recorded on a form submitted to the ALJ as Exhibit 20F.  But Ms. Krahulec never actually "observed" that his depression and anxiety were "adequately controlled with medication" in the form just described.  Instead, in that form she listed his medications and entered a "0" next to "Depression" and "Anxiety."  *See id.*  at 273.

Moreover, this is hardly solid evidence that Mr. Groberg had achieved any long-term stability on his medications.  As the merits panel decision makes clear, Mr. Groberg experienced many ups and downs in his condition.  *Groberg*, 415 F. App'x at 71.  A single "good day" at the doctor's office does not necessarily signify the lack of any occupational effects from mental disorders.  In fact, during the same appointment that produced the "zero" ratings for anxiety and depression symptoms, Mr. Groberg stated that he planned to "begin[] an outpatient group for anxiety and panic," Aplt. App., Vol. II at 275, indicating an ongoing problem that deserved further attention from the ALJ.

We stress again that the ALJ concluded these ailments would pose *no* limit on Mr. Groberg's ability to work.  The merits panel found this evaluation to be "seriously deficient" and "unsupported by substantial evidence."  *Groberg*, 415 F. App'x at 67.  The Commissioner's attempt to argue harmless error was not substantially justified.

In addition to the argument made in his district court merits brief, the Commissioner raised three contentions in the merits appeal briefing that should be mentioned here.[4]  First, he argued that "[t]he record . . . supports the ALJ's finding that [Mr.] Groberg's daily activities belied his allegations that his mental condition imposed severe functional limitations."  Aplee. Rev. Supp. App. at 230.  But the issue was not whether Mr. Groberg had "severe functional limitations"; it was whether the ALJ should have imposed *no limitation at all* based on Mr. Groberg's numerous mental disorders.

Second, the Commissioner argued that "while the record also contained some evidence that [Mr.] Groberg's mental condition had periodic downturns, there remained abundant evidence supporting the ALJ's decision" and "it was the ALJ's role to weigh competing evidence."  *Id.* at 231.  The Commissioner did not cite any particular record evidence to support the ALJ's decision to assign no limitation based on Mr. Groberg's mental condition.  Nor did he address how longitudinal fluctuations

---

[4]      In his reply brief in the merits appeal, Mr. Groberg did not assert that these arguments were barred based on the Commissioner's failure to raise them before the district court.

- 14 -

in Mr. Groberg's condition could be equated to "competing evidence." If the Commissioner meant that the ALJ could simply pick and choose from the medical evidence by only looking at Mr. Groberg's condition when he was at his best, the merits panel rejected this contention.

Third, the Commissioner argued that the ALJ implicitly included mental limitations in the hypothetical question he posed to the VE because the ALJ had asked the VE to identify only unskilled jobs and the ALJ had only listed unskilled jobs at step five of his analysis. The Commissioner contended that because unskilled work requires "little or no judgment to do simple duties that can be learned in a short period of time," *id.*, Mr. Groberg failed to show that the ALJ erred in concluding he could do such work, even if he were mentally impaired to some degree. Furthermore, to the extent Mr. Groberg claimed he could not tolerate being around large groups of people he did not know, two of the three jobs the ALJ identified "did not require significant contact with people or any talking with people at all." *Id.* at 233.

This argument is not a true "harmless error" argument because it supplies a new factual and/or legal predicate not present in the ALJ's reasoning. In any event, it runs directly counter to Tenth Circuit authority. A limitation to "simple work" or "unskilled jobs" is generally insufficient to address a claimant's mental impairments. *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (citing cases); *Wayland v. Chater*, Nos. 95-7029, 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) ("[T]he tacit premise in the ALJ's analysis, i.e., that a cognitive or emotional

- 15 -

impairment may be functionally equated with the lack of a skill, as that term is employed in the Secretary's regulations, is wrong. Numerous authorities illustrate the basic point that intact mental aptitudes are not skills, but, rather, general prerequisites for most work at any skill level.").[5] The Commissioner's argument on this point was therefore not substantially justified.

### 2. Spinal Disorder Listing

The merits panel concluded that the ALJ erred in determining that Mr. Groberg's back problems did not meet the Listing for spinal disorders. The ALJ had interpreted the medical evidence as failing to show "nerve root compression, spinal arachnoiditis, or pseudoclaudication." *Groberg*, 415 F. App'x at 72 (internal quotation marks omitted). The merits panel reached a different conclusion than the ALJ about whether there was *any* evidence of these conditions in the record. It concluded that there was enough evidence to require further discussion of whether Mr. Groberg met the Listing.

On appeal, the Commissioner defended the ALJ's position by relying on a regulation concerning the quantum of evidence required to meet the Listing. The merits panel read this regulation differently than the Commissioner did. But the correct reading of this highly-technical regulation was far from obvious.

---

[5] Although *Wayland* is an unpublished case and is not precedential, we cite it for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A).

The Commissioner's position concerning the spinal disorder Listing issue was thus reasonable, even if wrong. These issues were highly technical and required a nuanced interpretation of the medical record and the law. The district court did not abuse its discretion in determining that the ALJ's and Commissioner's position concerning this issue was substantially justified.

\* \* \*

The fact that the Commissioner took a substantially justified position concerning the spinal disorder Listing issue, however, does not bar Mr. Groberg from obtaining an EAJA fee. As we have shown, neither the ALJ's decision nor the Commissioner's litigation position on the mental impairment issue was substantially justified. The mental impairment issue was the primary focus of the merits panel's decision, and the ALJ's errors concerning Mr. Groberg's mental impairments were sufficiently serious that a remand for an award of benefits would have been justified on the basis of this issue alone. Thus, *viewed as a whole*, the Commissioner's position in this case was not substantially justified. *See Hackett*, 475 F.3d at 1173 n.1 (concluding that Commissioner's position in case was not "substantially justified" and that EAJA fee was appropriate even though Commissioner prevailed on five of six issues presented in district court, where plaintiff obtained remand based on single discrete issue that resulted in unreasonable denial of benefits, other issues were unrelated to that issue, and other issues did not provide a basis to affirm ALJ's decision).

- 17 -

## CONCLUSION

We conclude the district court abused its discretion in denying the claimant's motion for an EAJA fee. The judgment of the district court is therefore REVERSED and the case is REMANDED with instructions to grant the motion and to award a reasonable fee and appropriate costs to Mr. Groberg.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge