**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TEVA M. EVANS,

    Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant - Appellee.

No. 15-1222
(D.C. No. 1:13-CV-01853-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

## I. BACKGROUND

Teva Evans applied for supplemental security income benefits. An

administrative law judge (ALJ) denied her application, and the Appeals Council

denied review. Ms. Evans sought relief in the district court, which remanded for

further proceedings and granted Ms. Evans's motion for an award of attorney fees

under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. On remand, the

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

ALJ again denied her application and the Appeals Council again denied review. Ms. Evans then obtained another remand from the district court based on errors in two of the five issues she raised. After the second remand, Ms. Evans moved for another EAJA award. The district court denied the motion, concluding that although the Commissioner's position on the remanded issues was incorrect, it was nonetheless substantially justified. Ms. Evans appeals the denial of her request for attorney fees based on the second remand. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## II. **DISCUSSION**

### A. *Legal Background*

Under EAJA, a party other than the United States who prevails on judicial review of federal agency action is entitled to attorney fees and other expenses unless, among other things, "the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). The government bears the burden to make this showing. *See Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007).

"The test for substantial justification in this circuit is one of reasonableness in law and fact. Thus, the government's position must be justified to a degree that could satisfy a reasonable person . . . [and] can be justified even though it is not correct." *Id.* (citations and internal quotation marks omitted). The government is more likely to meet this standard when the legal principle on which it relied is

"unclear or in flux." *Martinez v. Sec'y of Health & Human Servs.*, 815 F.2d 1381, 1383 (10th Cir. 1987).

"'[P]osition of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). The general rule is that EAJA fees "should be awarded where the government's underlying action was unreasonable even if the government advanced a reasonable litigation position." *Hackett*, 475 F.3d at 1174. But we have recognized an exception when the government advances a reasonable litigation position that "cure[s] unreasonable agency action." *Id.* at 1173–74. In the social security context, we have interpreted that exception to include "when the Commissioner reasonably (even if unsuccessfully) argues in litigation that the ALJ's errors were harmless." *Groberg v. Astrue*, 505 F. App'x 763, 765–66 (10th Cir. 2012).[1]

"We review the district court's determination that the Commissioner's position was substantially justified for an abuse of discretion. An abuse of discretion occurs when the district court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings." *Hackett*, 475 F.3d at 1172. "The issue of whether the district court relied on the correct legal standard in applying the EAJA, however, is a matter of law which we review *de novo*." *Hadden v. Bowen*, 851 F.2d 1266, 1268 (10th Cir. 1988).

---

[1] *Groberg* is unpublished and therefore not precedential. As with all other unpublished cases discussed in our decision, we cite it for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

*B. Analysis*

With these general principles in mind, we turn our focus to the two issues that led to the second remand. *See Hackett*, 475 F.3d at 1173 n.1 (confining EAJA analysis to the one issue (of six) on which claimant prevailed); *Flores v. Shalala*, 49 F.3d 562, 566 (9th Cir. 1995) (directing courts considering EAJA fee motions to focus on issues a party has prevailed on in the district court). The first issue concerns the ALJ's error in including a silverware wrapper job among those Ms. Evans could perform in the national economy. The second issue concerns the ALJ's error of restricting Ms. Evans to unskilled work to account for her mental impairment.

1. **Jobs in the national economy**

    *a. ALJ*

The ALJ concluded that Ms. Evans was not disabled at step five of the sequential evaluation process set out in 20 C.F.R. § 416.920(a)(4) because, with her residual functional capacity, she could perform three jobs that exist in significant numbers in the national economy: silverware wrapper, 107,450 positions nationally and 1,867 in Colorado; document preparer, 15,296 positions nationally and 131 in Colorado; and surveillance system monitor, 3,535 positions nationally and 141 in Colorado.

    *b. District court—first issue, second remand*

In the district court, the Commissioner conceded that it was error to include the silverware wrapper job but argued that the error was harmless because, even

excluding that job, the two remaining jobs existed in "significant numbers."[2] The court rejected the Commissioner's harmless error argument.

The district court recognized that in *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), this circuit refused to draw a "bright line establishing the number of jobs necessary to constitute a 'significant' number." The district court further explained that in *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004), we indicated harmless error might be appropriate in cases involving larger numbers of jobs than we considered substantial in *Trimiar* (650–900 in Oklahoma). Harmless error under *Allen*, however, requires "the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* The district court concluded that Ms. Evans's case did not meet the *Allen* test because, after excluding the 107,450 national silverware jobs, the number of remaining jobs in the national economy (18,831 in the aggregate) was too small for the court to conclude that it was a significant number as a matter of law.

In reaching that conclusion, the court distinguished two cases the Commissioner relied upon. The first, *Raymond v. Astrue*, 621 F.3d 1269, 1274 & n.2 (10th Cir. 2009), explained "that the proper focus generally must be on jobs in the

---

[2] As relevant to a step-five determination, an individual is disabled only if she is unable to perform any kind of "work which exists in the national economy," which "means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

national, not regional, economy" and considered 1.34 million national jobs large enough to be substantial. Although harmless error was not at issue in *Raymond*, the district court noted that the remaining number of national jobs in Ms. Evans's case was nowhere close to the *Raymond* figure.

In the second case, *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009), we implied that 11,000 national jobs was a significant number. The district court, however, did not find *Rogers* persuasive for the notion that the number of remaining national jobs (18,831) in Ms. Evans's case was "significant" as a matter of law because in *Rogers* the figure was stated in dictum and harmless error was not at issue.

The district court considered Ms. Evans's case to be on "all-fours" with *Chavez v. Barnhart*, 126 F. App'x 434, 436 (10th Cir. 2005), in which we declined to find harmless error when, after excluding some jobs the ALJ had improperly identified, there remained 199 regional and 49,957 national jobs the claimant could still perform. The court remanded to the ALJ for the second time so the ALJ could determine whether 18,831 was a significant number of remaining national jobs.

*c. District court and attorney fees*

In its decision on EAJA fees, the district court concluded that the Commissioner, although unsuccessful, was substantially justified in arguing harmless error. The court reasoned that the conflicting authority cited in its merits decision "could reasonably be viewed as supporting a decision either way," and that ultimately it had elected to remand based on *Chavez*. Aplt. App. at 168. The court noted a statement in its merits decision "that it would not be surprised" if the ALJ found that

the remaining national jobs existed in significant numbers, and it summed up by stating that "reasonable minds clearly could differ" and the issue had been "a very close call." *Id.*

### d. Arguments on appeal

#### i. Post-hoc rationale

On appeal, Ms. Evans first argues that the Commissioner did not advance a "true" harmless error argument because she supplied a factual finding the ALJ did not make—that 18,831 jobs in the national economy is significant for step-five purposes. Ms. Evans contends, citing *Hackett*, 475 F.3d at 1175, that the Commissioner improperly attempted to salvage the ALJ's decision post hoc. In Ms. Evans's view, *Trimiar*'s refusal to draw a bright line regarding what constitutes a significant number of jobs means that, except when there are more than one million remaining jobs (as in *Raymond*), an ALJ must make the determination, not a court. And because the number of jobs here was much smaller, it was unreasonable for the Commissioner to advance the harmless-error argument.

The "plus one million jobs" standard Ms. Evans advances proves to be this argument's undoing. She acknowledges there is no per se barrier to applying harmless error where, as here, a court has decided that an ALJ erroneously included one or more jobs and is left with the remaining jobs a claimant can perform with her residual functional capacity. In *Raymond* and other social security cases, we have held an ALJ's erroneous inclusion of some jobs to be harmless error where there remained a significant number of other jobs in the national economy. *See, e.g.,*

- 7 -

*Bainbridge v. Colvin*, 618 F. App'x 384, 391–92 (10th Cir. 2015) (500,000 jobs);

*Shockley v. Colvin*, 564 F. App'x 935, 940–41 (10th Cir. 2014) (215,000 jobs);

*Chrismon v. Colvin*, 531 F. App'x 893, 899-900 (10th Cir. 2013) (212,000 jobs);

*Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (152,000 jobs).  The

Commissioner's harmless-error argument was not, therefore, an improper post-hoc

rationale.[3]

      ii.    Tenth Circuit Precedent

Ms. Evans's other contention is that the Commissioner's harmless-error

argument conflicted with *Trimiar*'s refusal to draw a bright line regarding what

constitutes a significant number of jobs and *Allen*'s harmless-error standard.  As

*Trimiar* pointed out, there is no bright-line answer to how many jobs are enough for a

court to say, as a matter of law, that the number is significant, but the number appears

to be somewhere between 100, the number of jobs in *Allen* that we refused to

consider significant for harmless-error purposes, and 152,000, the lowest number of

jobs we have considered (in *Stokes*) to be sufficient so far for application of harmless

error.[4]  Based on these numbers, the Commissioner was substantially justified in

---

[3]  Given this conclusion, we need not reach the Commissioner's response to Ms. Evans's post-hoc argument—that the ALJ's finding regarding the number of available jobs can reasonably be read to mean any one of the three jobs, standing alone, exists in significant numbers because the ALJ did not aggregate the numbers.

[4]  *Trimiar* concluded that substantial evidence supported the ALJ's finding that 650–900 jobs in Oklahoma (where the claimant lived) was a significant number, *see* 966 F.2d at 1330-32, because the ALJ had analyzed a number of specific factors, including "the level of [the] claimant's disability; the reliability of the vocational expert's testimony; the distance [the] claimant is capable of travelling to engage in

arguing for harmless error based on the 18,831 remaining jobs here. Also, a close reading of *Chavez* suggests it was the extremely low number of jobs in Oklahoma (199) that drove our reluctance to find harmless error. *See Chavez*, 126 F. App'x at 436 (stating that leaving the significant-number question for the ALJ "is particularly appropriate where . . . the number of jobs *in the region* is relatively small—199" (emphasis added)).

*Chavez* was decided before *Raymond* clarified "that the relevant test is *either* jobs in the regional economy *or* jobs in the national economy," although generally the focus is on the national economy. *Raymond*, 621 F.3d at 1274 n.2. *Raymond*'s effect on *Chavez* therefore offers further support for concluding that the Commissioner was substantially justified in arguing that 18,831 remaining jobs in the national economy was sufficient for applying harmless error in this case.

---

the assigned work; the isolated nature of the jobs; [and] the types and availability of such work." *Id.* at 1330 (quotation omitted). Ms. Evans suggests the ALJ must perform a similar factoral analysis with regard to the remaining 18,831 jobs and that the Commissioner was accordingly not substantially justified in arguing harmless error. Where, however, the number of jobs is "much larger" than the 650–900 at issue in *Trimiar*, no factoral analysis is required. *Raymond*, 621 F.3d at 1275 n.2. Admittedly, the number of remaining jobs in *Raymond* was much larger than in Ms. Evans's case. But given *Raymond*'s understanding of *Trimiar*—the extremely low number of jobs in *Trimiar* triggered the need for a factoral analysis—coupled with the fact that the remaining jobs in this case are in the national economy, the Commissioner's harmless-error argument did not lack substantial justification merely because a court *might* decide that an ALJ would have to apply *Trimiar*'s factoral analysis when 18,831 national jobs remain.

- 9 -

2. **Mental Limitations**

   *a.  District court—second issue, second remand*

On the second remanded issue, Ms. Evans had argued that the ALJ's restriction to unskilled work did not adequately account for impairments the ALJ found in her ability to carry out simple instructions and to focus and concentrate. Although the Commissioner addressed the simple-instruction impairment at some length, she addressed the focus-and-concentrate impairment only generally. As to the latter, the Commissioner pointed out that Ms. Evans primarily relied on dicta in *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012), that unskilled work "account[s] for issues of skill transfer, not impairment of mental functions—which are not skills but, rather, general prerequisites for most work at any skill level," (internal quotation marks omitted). The Commissioner said *Chapo* had supported this statement by relying on our pronouncement in an unpublished case, *Wayland v. Chater*, Nos. 95-7029, 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) (unpublished), that it was "wrong" to "functionally equate[]" a mental impairment with skill level.

The district court addressed only the focus-and-concentrate impairment, construing the ALJ's decision as finding a moderate limitation. The court considered *Chapo* and *Wayland* persuasive. It concluded that the relationship between skill level and the limitation in Ms. Evans's ability to focus and concentrate was not, as stated in *Wayland*, of the sort "'so obviously accommodated by a reduction in skill level'" to relieve the ALJ from his duty to include the focus-and-concentrate limitation in the

hypothetical he posed to the vocational expert (VE) who testified at the hearing regarding Ms. Evans's ability to work despite her impairments. Aplt. App. at 135-36 (quoting *Wayland*, 1996 WL 50459, at *2).[5] The court therefore remanded on that ground.

### b. District court and attorney fees

In its EAJA decision, the district court determined that the Commissioner's argument was not unreasonable because there was conflicting Tenth Circuit authority and because this type of issue turns on the individual facts of the case. In her response to the EAJA motion, the Commissioner cited *Wendelin v. Astrue*, 366 F. App'x 899, 904 (10th Cir. 2010), in which we determined that an ALJ's hypothetical to a VE limiting the claimant to unskilled work adequately accounted for concentration difficulties given that the ALJ recognized that treating physicians "had not imposed restrictions or stated that she could not engage in competitive work" despite expressing credible opinions that the claimant's pain interfered with her concentration. The district court stated that although it had ultimately sided with Ms. Evans, the question was close, and both the underlying ALJ decision and the Commissioner's litigating position had a reasonable basis in law and fact. Accordingly, the court denied an EAJA award based on this issue.

---

[5] Because the district court addressed only the focus-and-concentration impairment, we accordingly limit our review despite Ms. Evans's appellate arguments concerning the simple-instruction impairment.

*c.* *Arguments on appeal*

    i.    <u>Tenth Circuit precedent</u>

On appeal, Ms. Evans argues that the district court erred in concluding there was conflicting Tenth Circuit authority on this issue. She contends that in *Groberg*, we indicated that *Chapo* and *Wayland* were controlling Tenth Circuit authority when we cited those cases in support of the principle that "[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." *Groberg*, 505 F. App'x at 770.

Although *Groberg* cited *Chapo* and *Wayland*, *Wayland* acknowledged that "there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with." 1996 WL 50459, at *2. And in *Groberg* itself, we said that limiting a claimant to "unskilled jobs" is only "*generally insufficient*" to address mental impairments. 505 F. App'x at 770 (emphasis added). Thus, both *Wayland* and *Groberg* acknowledged there can be an exception to *Chapo*'s suggested general approach.

These four cases—*Groberg*, *Chapo*, *Wayland*, and *Wendelin*—illustrate that, in general, limiting a claimant to unskilled work will not sufficiently convey the degree of a claimant's mental impairments to a VE. But a restriction to unskilled work can account for a mental impairment in an appropriate case, for example, when the relationship between skill level and mental capacity is obvious (as stated in *Wayland*) or when an ALJ credits a medical-source opinion that a claimant's

- 12 -

concentration deficit does not affect the ability to do unskilled work (similar to *Wendelin*).

We recently discussed this issue in *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015), in which we recognized that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." Ultimately, however, we held that a limitation to unskilled work adequately accounted for a moderate limitation in concentration, persistence, and pace because the ALJ "found that the findings of a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicated that Vigil retained enough memory and concentration to perform at least simple tasks." *Id.* at 1203-04 (brackets and internal quotation marks omitted).

The Commissioner's argument that the district court should not follow *Chapo* and *Wayland* was reasonably justified in law, and the district court did not commit a legal error when it concluded there is conflicting authority on the subject. *See Martinez*, 815 F.2d at 1383 (government's position more likely to be substantially justified when the legal principle on which it relied is "unclear or in flux"). For the same reasons, the ALJ's attempt to account for the focus-and-concentration limitation through an unskilled-work restriction was substantially justified.

### ii. Factual Justification

We next ask whether the ALJ's decision and the Commissioner's litigating position were substantially justified in fact. We conclude that they were.

- 13 -

The ALJ found that Ms. Evans's ability to focus and concentrate was "somewhat more severe" than the degree of impairment found by a consulting psychologist, Dr. Morton. But it is unclear what the ALJ meant by that. After examining Ms. Evans in 2008, Dr. Morton opined that she has "minimal mental limitations in regard to maintaining attention, concentration, and pace." Admin. R., Vol. II at 481. In his decision, the ALJ repeated Dr. Morton's opinions regarding limitations in other mental functions, but not his opinion regarding attention and concentration.[6]

The ALJ, however, did give great weight to Dr. Morton's observations as a whole, which, the ALJ said, "indicate the claimant has no insurmountable barriers to performing at least simple work." *Id.*, Vol. III at 641. Only then did the ALJ conclude that Ms. Evans's ability to focus and concentrate was "somewhat more severe" than Dr. Morton had opined. *Id.* In addition, the ALJ gave great weight to an opinion Dr. Morton advanced after a second consultative examination two-and-a-half years later—that Ms. Evans had only mild limitations in maintaining attention, which the ALJ interpreted to mean "no significant degree of impairment," *id.* at 642.

---

[6] Specifically, the ALJ repeated Dr. Morton's opinion that Ms. Evans was (1) mildly limited in her "ability to make judgments on simple or complex work-related decisions, . . . to interact appropriately with the public, supervisors and coworkers, and . . . to respond appropriately to usual work situations and to changes in a routine work setting"; (2) moderately limited in her "ability to carry out simple instructions"; and (3) markedly limited in her "ability to [carry] out detailed instructions." Admin. R., Vol. III at 640–41.

From the foregoing, it appears at least reasonably debatable that the ALJ considered Ms. Evans's ability to focus and concentrate to be mild or something more than minimal or mild (as Dr. Morton had found) but less than moderate (as the district court ultimately construed the ALJ's finding).  The ALJ was therefore substantially justified in fact (although, in the district court's opinion, ultimately wrong) in accounting for Ms. Evans's limitation in this area by limiting her to unskilled work since mild limitations in focus and concentration can be consistent with unskilled work.  *See Jaramillo v. Colvin*, 576 F. App'x 870, 875–76 (10th Cir. 2014) (distinguishing between "moderate" limitations in attention and concentration, which a limitation to unskilled work did not sufficiently account for, and lesser limitations in those functional areas, which a limitation to unskilled work could account for).[7]

Because the ALJ's finding as to the degree of Ms. Evans's limitation in focus and concentration was reasonably debatable, the Commissioner's litigating position was substantially justified in fact given that our case law, as we have discussed, leaves open the possibility that, in the right circumstances (such as in *Vigil*), a

---

[7] Although *Jaramillo* was decided after the district court's decision on the merits of Ms. Evans's case, its analysis is helpful to understanding the state of this circuit's jurisprudence stemming from *Chapo* and other cases regarding whether a restriction to unskilled work can account for mild to moderate mental limitations.

limitation to unskilled work can account for even moderate limitations in mental functions.[8]

### III. **CONCLUSION**

The judgment of the district court is affirmed.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge

---

[8] This case is closer to *Wendelin* than *Groberg*. In *Wendelin*, we approved the ALJ's use of a limitation to unskilled work because treating physicians thought the claimant's pain interfered with concentration but not work. *Wendelin*, 366 F. App'x at 904. Here, the Commissioner could reasonably construe the ALJ's discussion of Dr. Morton's opinions as finding that Ms. Evans's focus and concentration limitations only mildly affect her ability to work.

In *Groberg*, the merits panel concluded that "the ALJ's evaluation of the medical evidence concerning [Mr.] Groberg's mental impairments was seriously deficient," that the medical evidence showed a "debilitating set of mental impairments," and that the ALJ had made numerous "unsupported findings" in support of his conclusion that Mr. Groberg's "mental impairments posed *no* limitation on his ability to work." *Groberg v. Astrue*, 415 F. App'x 65, 67-68 (10th Cir. 2011). Here, the district court reasoned only it was not obvious that a restriction to unskilled work could account for Ms. Evans's limited ability to focus and concentrate.

Further, in our *Groberg* EAJA decision, we determined that the ALJ's decision was not substantially justified because of the "many, serious deficiencies" the merits panel had identified. *Groberg*, 505 F. App'x at 768. Based on those deficiencies, we concluded the Commissioner was not substantially justified in making a host of arguments, including that the ALJ's errors were rendered harmless by a limitation to unskilled work. *Id.* at 770. Here, the ALJ's decision was not nearly as flawed as the one in *Groberg*, and the Commissioner's litigation position was substantially justified because, unlike the multiple impairments in *Groberg*, the degree of impairment the ALJ found in Ms. Evans's ability to focus and concentrate was reasonably debatable.