**Patricia ALCANTAR, Plaintiff,**

**v.**

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**Civil Action No. 15-cv-01448-REB**

United States District Court, D. Colorado.

Signed September 14, 2016

Diane Katherine Bross, Diane K. Bross, P.C., Colorado Springs, CO, for Plaintiff.

Danielle Alicia Pedderson, Melissa Carol Schuenemann, Social Security Administration, J. Benedict Garcia, U.S. Attorney's Office, Denver, CO, for Defendant.

## ORDER REVERSING DISABILITY DECISION AND REMANDING TO COMMISSIONER

Blackburn, United States District Judge

The matter before me is plaintiff's **Complaint** [#1],[1] filed July 8, 2015, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand for the limited purpose of allowing the ALJ to clarify the basis of his mental residual functional capacity determination.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges she is disabled as a result, *inter alia*, of post-traumatic stress disorder ("PTSD") and a mood disorder. After her application for supplemental security income benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on November 25, 2013. At the time of the hearing, plaintiff was 29 years old. She has an eighth grade education and past relevant work experience as a customer service representative, carpet installer helper, and construction laborer. She has not engaged in substantial gainful activity since September 21, 2012, the date of her application for benefits.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits. Although the evidence established plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.[2] The ALJ found plaintiff had

---

1. "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

2. Other alleged impairments were found to be non-severe, a finding plaintiff does not challenge in this appeal.

the residual functional capacity to perform a reduced range of light, unskilled work which, relevantly, required no more than occasional interaction with the general public and the ability to understand, remember, and carry out simple instructions. Although this finding precluded plaintiff's past relevant work, the ALJ concluded there were jobs existing in significant numbers in the national and local economies she could perform. He therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

■ A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir.1987) (citing 42 U.S.C. § 423(d)(2)(c). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir.1995).

■ The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 416.920(a)(4)(I)–(v). *See also Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir.1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir.1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D.Colo.1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff claims the ALJ erred in weighing the two medical source opinions of record regarding her alleged mental impairments,[3] discrediting her subjective complaints of functional mental limitations, and failing to explain why some limitations endorsed by the non-examining medical source were not adopted. The first two of these arguments are patently meritless. However, the third has traction and requires remand for the very limited purpose of allowing the ALJ to more fully articulate his findings as to the precise nature and vocational impact, if any, of plaintiff's moderate limitations in concentration, persistence, and pace.

In almost every respect, the ALJ's opinion is a model of clarity and well-substantiated ratiocination. The evidence of record fully supports the ALJ's characterization of plaintiff's history of mental health treatment as minimal and conservative.[4] Against that backdrop, the ALJ's conclusion that plaintiff's subjective complaints regarding her mental limitations were not credible admits of no reversible error. In general, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir.2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir.1995)). The ALJ here gave clear, specific, legitimate reasons linked to specific evidence in the record for his credibility assessment. His findings in this regard find support in the record, and

---

3. At the administrative level, plaintiff also asserted a number of allegedly disabling physical impairments. As she does not challenge the ALJ's unfavorable findings as to any of those alleged impairments, the court does not address them, nor are they appropriate subjects for reconsideration on remand.

4. Plaintiff first sought treatment for PTSD from Aspen Point Mental Health in October 2011. At her initial interview, she was assessed a GAF score of 45 (Tr. 297), and was recommended to undergo group and individual therapy. (Tr. 294.) However, plaintiff ultimately was discharged from care in January 2013, having attended only two appointments in the ensuring 15 months and repeatedly missed scheduled appointments. (Tr. 533.) Another isolated record reference shows plaintiff requested a prescription for Zoloft in late 2013 (Tr. 604), although there is no evidence that she in fact received such medication. Finally, during a routine contraceptive management appointment in July 2013, plaintiff reported that she had tried to reestablish treatment with Aspen Pointe but was not successful and quit trying. She was provided with handouts on relaxation techniques to work on managing stress and improving sleep. (Tr. 629.) Such is the extent of the objective medical evidence relating to plaintiff's alleged mental impairments.

his determination therefore is entitled to substantial deference. *White*, 287 F.3d at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.2000). Accordingly, I find no reversible error on this basis.[5]

■ Moreover, I perceive no error in the relative weights the ALJ assigned to the medical source opinions of record. The ALJ articulated valid reasons for affording "little weight" to the opinion of the consultative psychiatric examiner, Dr. Victor Neufeld (*see* Tr. 379-387), most notably that it was contrary to the medical evidence which showed minimal, conservative mental health treatment. (Tr. 27.) Not only is this an appropriate basis for affording less weight to a medical source opinion, *see Fernandez v. Colvin*, 2014 WL 928246 at *3 (D.Colo. Mar. 10, 2014) (citing *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)), but the ALJ appropriately tied that assessment to the evidence of record. Nor can the ALJ be faulted for finding Dr. Neufeld's opinions too broad and conclusory to be of much help in crafting a viable residual functional capacity assessment. Dr. Neufeld's suggestion that plaintiff was "moderately to markedly impaired in understanding and recalling instructions, social interaction, persistence and pace" (*see* Tr. 385)[6] failed to quantify in any helpful way just how those limitations might be thought to play out in terms of real-world, work-related functioning.

■ By contrast, the ALJ afforded "moderate weight" to the opinion of the non-examining state agency psychiatrist, Dr. James Wanstrath, on the grounds that it was "rendered after a thorough review of the record" and was "somewhat consistent with the record." However, whereas Dr. Wanstrath opined that plaintiff should have only superficial interaction with supervisors and coworkers and none with the general public (Tr. 62), the ALJ found those limitations to place over much reliance on the opinion of Dr. Neufeld, which had already been discounted on the bases cited above (Tr. 27).

■ This much of the ALJ's opinion is unassailable. "Although an ALJ is not required to adopt every restriction suggested by a medical or other source *in toto*, he still must explain why certain limitations were not adopted." *Gallegos v. Colvin*, 2014 WL 884795 at *5 (D.Colo. Mar. 6, 2014) (internal citations omitted). With respect to assessing plaintiff's limitations in social functioning, the ALJ did just that.

■ Remand is required, however, because the ALJ went on to state that Dr. Wanstrath's "limitations on concentration, persistence, and pace appear consistent with the record as a whole[.]" (Tr. 27.)

---

5. Plaintiff claims the ALJ improperly discredited her description of her activities of daily living by noting they could not be objectively verified, suggesting this was merely a conclusion in the guise of a finding. Were this the only reason the ALJ gave for discrediting plaintiff's self-reports, the court would be inclined to agree, but it was not. (*See* Tr. 25-26.) Indeed, the ALJ's findings in this regard are nearly identical to those expressly validated by the Tenth Circuit in *Wall v. Astrue*, 561 F.3d 1048 (10th Cir.2009):

> [T]he ALJ's statement that Claimant's daily limitations could not be "objectively verified with any reasonable degree of certain-

ty" did not state a standard by which the ALJ made his adverse determination of Claimant's credibility. Rather, the ALJ's statement was merely a common sense observation that the ALJ would not treat Claimant's testimony as "strong evidence" of her disability due to his prior determination that Claimant's testimony was not "fully credible."

*Id.* at 1070.

6. Dr. Neufeld's failure to specify which limitations were "moderate" and which were "marked" was particularly unhelpful, as this is a critical distinction for purposes of the residual functional capacity assessment

Specifically, under the heading "sustained concentration and persistence limitations," Dr. Wanstrath found plaintiff moderately limited in her abilities to maintain concentration and attention for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and work week without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. He therefore suggested plaintiff could "perform work which is not fast paced and does not require strict production demands." (Tr. 61-62).

Without addressing any of these specific findings, the ALJ concluded simply that plaintiff had "moderate limitations in concentration, persistence, and pace (defined as more than slight, but still able to perform the basic functions of unskilled work)[.]" (Tr. 23.) In imposing this same restriction in his hypothetical to the vocational expert at the hearing, the ALJ clarified that he defined the "basic functions of unskilled work" to correspond to "the ability to understand, carry out and remember simple instructions." (Tr. 47.) [7] The ALJ elsewhere noted Dr. Wanstrath's opinion supported a finding that plaintiff "was capable of work of limited complexity" (Tr.

27), which finding also appears to correspond to the residual functional capacity assessment's conclusion that plaintiff was capable of work requiring only the ability to understand, remember, and carry out simple instructions (Tr. 23).

A limitation to unskilled work, however, is generally insufficient to account for moderate limitations in the ability to maintain concentration, persistence, and pace, even when further refined to require only simple, routine, and repetitive tasks. *Jaramillo v. Colvin* 576 Fed.Appx. 870, 876 (10th Cir.2014). The Commissioner's reliance on the Tenth Circuit's decision in *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015), for the contrary position is misplaced. This is not a case in which the ALJ, having found moderate limitations in concentration, persistence, and pace at step two or three of the sequential evaluation, declined to include further restrictions in the step four determination of residual functional capacity. *Id.* at *3.[8] Instead, in fashioning the residual functional capacity assessment, the ALJ here purported to adopt a medical source's opinion while simultaneously failing to explain why potentially significant limitations contained in that opinion were not adopted. Because that same lack of clarity likewise infected

---

7. That definition is consistent with that endorsed by the Commissioner, which defines unskilled work as work which requires the mental ability, on a sustained basis, "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." **Social Security Ruling 85-15**, 1985 WL 56857 at *4 (SSA 1985). *See also* 20 C.F.R. § 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").

8. Moreover, *Vigil* itself does not stand for a blanket proposition that a limitation to unskilled work necessarily accounts for deficits

in concentration persistence and pace—indeed, the law of the Tenth Circuit plainly is to the contrary. *See, e.g., Groberg v. Astrue*, 505 Fed.Appx. 763, 770 (10th Cir.2012). Instead, *Vigil* merely clarifies that, when deficits in concentration, persistence, and pace are found to exist, the ALJ's decision must make plain why the residual functional capacity assessment does not include such limitations. *See Baysinger v. Colvin*, 2016 WL 1170147 at *3 (D.Colo. March 25, 2016) ("Although an unexamined equivalence between unskilled work and the ability to maintain concentration, persistence, and pace may be error, an adequately substantiated finding ... constitutes substantial evidence in support of the disability determination.") (internal citations omitted).

the hypothetical propounded to the vocational expert at the hearing, the Commissioner's step five determination premised on the vocational expert's necessarily incomplete testimony is infirm.

Thus, despite the obvious care taken by the ALJ in every other respect, I am compelled to remand to allow him to clarify this aspect of the disability determination. Nevertheless, given the extremely limited nature of my remand order, I find that it would be a particular abuse of my discretion to grant plaintiff's request for a directed award of benefits in this case.[9] *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir.1993).

## IV. ORDERS

**THEREFORE IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is reversed;

2. That this case is remanded to the ALJ, who is directed to

a. Clarify whether the more specific limitations endorsed by Dr. Wanstrath on plaintiff's ability to maintain concentration, persistence, and pace are supported by the record;

b. Contact again any medical or other source, seek the testimony of additional medical or vocational experts, order further consultative examinations, or otherwise further develop the record as he deems necessary to enable him to address the matters specified in paragraph 2.a. above;

c. Reassess his determinations at steps four and five of the sequential evaluation in light of the record as developed on remand; and

d. Reassess the disability determination; and

3. That plaintiff is awarded her costs, to be taxed by the clerk of the court in the time and manner required by Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).

---

9. By this decision, I do not find or imply that plaintiff is or should be found to be disabled.