FILED
United States Court of Appeals
Tenth Circuit

January 20, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JIMMY DALE CARVER,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant - Appellee.

No. 14-5056
(D.C. No. 4:12-CV-00614-CVE-TLW)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

Jimmy Dale Carver appeals from an order of the district court affirming the

Commissioner's decision denying his application for supplemental security income

(SSI) benefits. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g),

and we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**BACKGROUND**

Carver sought SSI benefits due to back pain and depression. After his application was denied initially and on review, he had a hearing before an administrative law judge (ALJ), who issued a written decision. At step two of the five-step sequential evaluation process described in 20 C.F.R. § 416.920(a)(4), the ALJ determined that Carver had several severe impairments: "back pain . . . ; mood disorder, not otherwise specified; history of substance abuse, in remission; personality disorder, not otherwise specified (antisocial features)[;] and reduced visual acuity in the left eye." Aplt. App., Vol. II at 24-25 (boldface omitted). At step three, the ALJ found that none of Carver's severe impairments met or equaled a disabling impairment described in the Listings, 20 C.F.R. Pt. 404, Subpt. P, App. 1. As relevant to the issues in this appeal, the ALJ found at step three that Carver did not met the "paragraph B" criteria of several adult mental disorder Listings because he had only mild difficulties in activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace.

The ALJ then found that Carver retained the residual functional capacity (RFC) for light and sedentary work and that although he could not "interact with the public more than occasionally," he could "understand, remember, and carry out simple instructions in a work-related setting" and could "interact with co-workers and supervisors, under routine supervision." Aplt. App., Vol. II at 29. The ALJ further found that Carver could "remain attentive and responsive in a work-setting."

*Id.*  Because Carver had no past relevant work for step-four purposes, the ALJ made a dispositive finding at step five based on a vocational expert's (VE) testimony that a hypothetical person with the aforementioned RFC could perform other jobs that exist in significant numbers in the national economy, such as electronics assembler, housekeeper, semi-conductor assembler, and clerical mailer.  The Appeals Council denied review, and the district court affirmed.  Carver appeals.

## DISCUSSION

Our task in this appeal is limited to determining whether substantial evidence supports the agency's factual findings and whether the agency applied the correct legal standards.  *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks omitted).  We cannot "reweigh the evidence" or "substitute our judgment for that of the agency."  *Id.* (internal quotation marks omitted).

On appeal, Carver argues that the ALJ improperly accounted for moderate limitations in his ability to (1) accept instructions and respond appropriately to criticism from supervisors and (2) maintain concentration, persistence, or pace.  We address the issues in order.

### 1.  Accepting instructions/responding to supervisor criticism

Dr. Janice Smith, a nonexamining consultant from the State Disability Determination Services (DDS), completed a Mental Residual Functional Capacity

Assessment (MRFCA). In Section I of the MRFCA, "Summary Conclusions," Dr. Smith checked boxes indicating that Carver has moderate limitations in his ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) interact appropriately with the general public; and (4) accept instructions and respond appropriately to criticism from supervisors. Aplt. App., Vol. II at 237-38. In Section III of the MRFCA, the "Functional Capacity Assessment," she stated that Carver can "perform simple tasks with routine supervision," "relate to supervisors and peers on a superficial work basis," "relate superficially to the general public on a limited basis," and "adapt to a simple work situation." *Id.* at 239.

Carver claims that although the ALJ's RFC finding (and the corresponding hypothetical to the VE) accounted for the first three moderate limitations set out in Section I of Dr. Smith's MRFCA, the finding that he could "interact with co-workers and supervisors, under routine supervision" did not adequately account for the fourth Section I moderate limitation in his ability to "accept instructions and respond appropriately to criticism from supervisors." Therefore, he posits, the ALJ violated *Haga v. Astrue*, where we found reversible error when an ALJ rejected without explanation a state agency examining consultant's findings of several moderate mental limitations. 482 F.3d 1205, 1208 (10th Cir. 2007). Carver further claims that to the extent Dr. Smith intended to equate the fourth Section I moderate limitation to

his ability to "relate to supervisors and peers on a superficial work basis," as noted in Section III of the MRFCA, she failed to show how the two statements are equivalent.

We are not persuaded. The MRFCA itself states that Section I "is for recording summary conclusions derived from the evidence in the file" and directs that "[d]etailed explanation of the degree of limitation for each category . . . is to be recorded in Section III." Aplt. App., Vol. II at 237. This tracks several provisions of the Social Security Administration's Program Operations Manual Systems (POMS).[1] The POMS provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment:

> The purpose of section I . . . is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation . . . . **It is the narrative** written by the psychiatrist or psychologist in Section III . . . **that adjudicators are to use as the assessment of RFC**.

POMS DI 25020.010 B.1.; *see also* POMS DI 24510.060 B.4.a. (stating that "Section III . . . is for recording the mental RFC determination [and where] . . . the **actual mental RFC assessment is recorded**"); POMS DI 24510.065 A. (substantially the same).

---

[1] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). We "defer to the POMS provisions unless we determine they are 'arbitrary, capricious, or contrary to law,'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

But this does not mean that an ALJ can turn a blind eye to moderate Section I limitations. In a note to its description of the "moderately limited" checkbox, the POMS states that "[t]he degree and extent of the capacity or limitation *must be described* in narrative format in Section III [of the MRFCA]." POMS DI 24510.063 B.2. (boldface omitted) (emphasis added). The POMS also provides that "[t]he **discussion** of all mental capacities and limitations in [Section III] **must be in narrative format**," and that Section III is for "explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." POMS DI 24510.060 B.4.a. & B.4.b. Thus, if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding. Several district courts in this circuit have reached a similar conclusion based on reasoning we consider persuasive. *See, e.g.*, *Gorringe v. Astrue*, 898 F. Supp. 2d 1220, 1224-25 (D. Colo. 2012); *Baysinger v. Astrue*, No. 11-cv-00333-WYD, 2012 WL 1044746, at *5-6 (D. Colo. Mar. 28, 2012) (unpublished).

Applying these principles, we conclude that, contrary to Carver's argument, Dr. Smith's Section III narrative adequately encapsulated the moderate limitation in Carver's ability to accept instructions and respond appropriately to supervisor criticism that she marked in Section I. Dr. Smith's Section III statements that Carver

- 6 -

could "relate to supervisors and peers on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision," Aplt. App., Vol. II at 239, are the functional manifestations of that Section I moderate limitation. In other words, Dr. Smith's opinion was that Carver could relate to supervisors only superficially and with respect only to simple tasks requiring no more than routine supervision. Those are, in Dr. Smith's opinion, the effects of the moderate limitation in Carver's ability to accept instructions and respond appropriately to supervisor criticism. Hence, we reject Carver's argument that Dr. Smith failed to show how her narrative was equal to the language of the check-box limitation.

As noted, the ALJ gave great weight to Dr. Smith's opinion, but he did not repeat verbatim Dr. Smith's Section III narrative in his RFC finding or the corresponding hypothetical to the VE. In particular, as Carver observes, the ALJ did not use the word "superficially" in describing Carver's ability to interact with supervisors. But in our opinion, the ALJ sufficiently captured the essence of the Section III functional limitations by stating that Carver could "understand, remember, and carry out simple instructions in a work-related setting" and could "interact with co-workers and supervisors, under routine supervision." *Id.* at 29. Interacting with supervisors in the course of routine supervision over simple work is tantamount to the "superficial" interaction typically encountered in jobs involving such work. To conclude otherwise would parse the ALJ's language too finely.

Moreover, the ALJ's RFC finding (and corresponding hypothetical to the VE) is further supported by and consistent with the opinion of Dr. Derrise Garner, a psychologist who examined Carver for the DDS, that Carver could "interact in a limited contact situation involving work supervisors and/or co-workers." *Id.* at 227. The ALJ gave great weight to Dr. Garner's opinion, and Carver has not claimed error with respect to that opinion.

For all the foregoing reasons, we conclude that there was no error regarding this functional category.

### 2. Concentration, Persistence, or Pace

Carver next argues that the ALJ failed to include in the RFC and the corresponding hypothetical to the VE his own step-three "paragraph B" finding that Carver is moderately limited in concentration, persistence, or pace. We disagree. Social Security Ruling (SSR) 96-8p states that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment [than at steps two and three] by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The ALJ complied with the Ruling's requirements. In reaching his step-three finding, the ALJ discussed a third-party function report completed by Carver's fiancée in which she stated that Carver can pay attention for "as long as you keep his attention," is "good" at following written and spoken instructions, and can "finish what he[] starts." *Id.*

at 188. The ALJ also referred to Carver's own function report, where he stated he was "not very good" at handling stress or changes in routine. *Id.* at 162. And the ALJ discussed Dr. Garner's opinion that Carver "showed no significant impairment in his attention" and that his "attention and memory [were] within average range." *Id.* at 27. In formulating his RFC, which included only one limitation in this area—to work involving simple instructions, the ALJ expressly noted that his RFC "assessment reflects the degree of limitation [he] . . . found in the 'paragraph B' mental function analysis." *Id.* at 28. He then discussed Dr. Garner's report at length, quoting and affording great weight to her opinion that "[a]t the maximum, [Carver] can concentrate and persist on moderately complex tasks during a normal work day." *Id.* at 35 (quoting *id.* at 227).

Further, the ALJ also relied on the opinions set out in Dr. Smith's PRTF and MRFCA when formulating his RFC finding, although he did not discuss them in detail. *See id.* at 36 (stating, as part of his RFC analysis, that he gave "great weight to the opinions of the consultative examiners and medical consultants of the State [DDS]"). In the PRTF, Dr. Smith checked a box indicating that Carver was moderately limited in concentration, persistence, or pace. In Section I of the MRFCA, Dr. Smith marked only one moderate limitation in the category of "sustained concentration and persistence"— Carver's "ability to carry out detailed instructions." *Id.* at 237. In all other sub-categories of "sustained concentration and persistence," including the abilities to maintain attention and concentration for extended periods and to work at a consistent

pace, Dr. Smith marked boxes indicating that Carver was not significantly limited. In her Section III narrative, Dr. Smith limited Carver to "simple tasks" and stated he "can adapt to a simple work situation." *Id.* at 239. In so doing, Dr. Smith provided a POMS-compliant Section III narrative regarding concentration, persistence, or pace because she accounted for the one moderate limitation in that functional category when she limited Carver to simple tasks and work situations.

We next conclude that the ALJ permissibly relied on the functional limitations in concentration, persistence, or pace described in Section III of the MRFCA that stem from the general, moderate limitation indicated by the checked box in Section I (and, for that matter, by the checked box on the PRTF). The ALJ included the more-precise Section III functional limitations in his RFC finding and the corresponding hypothetical to the VE, including only a limitation related to the complexity of the work—that Carver could only perform jobs involving simple instructions.

Through his detailed review of Dr. Garner's report and his reliance on Dr. Smith's PRTF and MRFCA, the ALJ fulfilled his obligation to further examine the moderate "paragraph B" limitation in concentration, persistence, or pace he found at step three. Accordingly, there was no legal error, and Dr. Garner's report and Dr. Smith's PRTF and MRFCA constitute substantial evidence in support of the RFC and corresponding hypothetical to the VE regarding this functional category.

The judgment of the district court is affirmed.

Entered for the Court

Jerome A. Holmes
Circuit Judge