**Rico A. GONZALES, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**Civil Action No 15-cv-01693-RBJ**

United States District Court, D. Colorado.

Signed September 30, 2016

Michael W. Seckar, Michael W. Seckar, P.C., Pueblo, CO, for Plaintiff.

Alexess D. Rea, Lars Joseph Nelson, Social Security Administration, J. Benedict Garcia, U.S. Attorney's Office, Denver, CO, for Defendant.

### ORDER

R. Brooke Jackson, United States District Judge

This matter is before the Court on review of the Commissioner's decision denying claimant Rico A. Gonzales's application for Supplemental Security Income benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision.

### I. Standard of Review.

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Ricketts v. Apfel,* 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue,* 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). Regarding the application of the law, "reversal may be appropriate when the [Social Security Administration] Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Springer v. Astrue,* No. 11–cv–02606, 2013 WL 491923, at *5 (D. Colo. Feb. 7, 2013) (internal citation omitted).

## II. Background.

Mr. Gonzales was born on June 9, 1977 and lives in Pueblo, Colorado. R. 176–77. He took special education classes in high school but dropped out after ninth grade. R. 215. Since then he has worked only sporadically, holding down a job for no more than a year at a time. *Id.* He was enrolled in a GED class, but did not complete the course. *See* R. 43–44. In January 2009 he sought mental health treatment for depression, anxiety, and irritability on the referral of his probation officer. R. 335–36. He was discharged shortly thereafter for noncompliance, and he has received mental health treatment inconsistently over the following five years. *See* R. 317, 321–30, 333, 378–417.

### A. Procedural History.

On December 13, 2010 Mr. Gonzales applied for Supplemental Security Income, alleging disability beginning May 1, 2008. R. 176. The claim was initially denied on February 11, 2011. R. 89. Mr. Gonzales requested a hearing, which was held in front of Administrative Law Judge (ALJ) William Musseman on March 16, 2012. R. 39. The ALJ issued a decision denying benefits on April 3, 2012. R. 81. The Appeals Council granted Mr. Gonzales's request for review and remanded the case to the ALJ on June 10, 2013. R. 85. The ALJ held a second hearing on December 9, 2013. R. 33. On January 27, 2014 the ALJ again issued a decision denying benefits. R. 10. The Appeals Council rejected Mr. Gonzales's request for review on July 9, 2015, rendering the ALJ's determination the final decision of the Commissioner for the purposes of judicial review. R. 1. Mr. Gonzales filed a timely appeal in this Court.

### B. The ALJ's Decision.

The ALJ issued an unfavorable opinion after evaluating the evidence according to the Social Security Administration's standard five-step process. R. 15–27. First, he found that Mr. Gonzales had not engaged in substantial gainful activity since his application date of December 13, 2010. R. 15. At step two, the ALJ found that Mr. Gonzales had the severe impairments of affective disorder and borderline intellectual functioning. R. 15–21. At step three, the ALJ concluded that claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21–23.

The ALJ then found that Mr. Gonzales retained the residual functional capacity (RFC) to perform the full range of unskilled work[1] at all exertional levels subject to only occasional dealing with the general public and minimal supervision. R. 23. At step four, the ALJ concluded that Mr. Gonzales had never performed substantial gainful activity, and therefore had no past relevant work. R. 25. Finally, at step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Mr. Gonzales could perform. R. 26. Therefore, the ALJ concluded that Mr. Gonzales was not under a disability. R. 26–27.

### III. Discussion.

Mr. Gonzales contends that the ALJ: (1) disobeyed the Appeals Council's order to obtain additional evidence concerning Mr. Gonzales's cognitive functioning; (2) failed to weigh Dr. Brill's opinions; and (3) did not explain why he rejected some of the limitations in Dr. Brill's opinions. The Court will consider each argument in turn.

---

1. The ALJ's finding that Mr. Gonzales has the RFC to perform work of "SVP 2 or less" equates to "unskilled work." *See* R. 23; POMS DI 25001.001.B.88.

## A. Appeals Council's Order.

The Appeals Council remanded the case to the ALJ because his initial decision indicated that Mr. Gonzales had affective disorder and low intelligence but failed to evaluate their severity or effects. R. 86. The Appeals Council ordered the ALJ to:

Obtain additional evidence concerning the claimant's cognitive functioning in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 C.F.R. §§ 416.912-913). The additional evidence may include, if warranted and available, a consultative examination with psychological testing and medical source statements about what the claimant can still do despite the impairments.

*Id.* Mr. Gonzales claims that the ALJ disregarded this order because the record on remand did not contain an assessment of his cognitive functioning. ECF No. 18 at 20–24.

As an initial matter, the Court notes that there has been some disagreement about whether federal courts have jurisdiction to hear challenges to ALJs' compliance with orders of the Appeals Council. *See, e.g., Huddleston v. Astrue,* 826 F.Supp.2d 942, 954 (S.D.W. Va. 2011) (documenting different courts' approaches). Most relevant to us, the Tenth Circuit held in *Gallegos v. Apfel* that it could not hear such a case. No. 97–2267, 1998 WL 166064, at *2 (10th Cir. April 10, 1998). The court reasoned that it had the power to review only the Commissioner's final decisions, so it could not reach the question of whether an ALJ followed the Appeals Council's instructions. *See id.* at *1. Two district

courts in this circuit have followed *Gallegos* and dismissed similar appeals. *See Peckham v. Astrue,* 780 F.Supp.2d 1195, 1203 (D. Kan. 2011); *Gabaldon v. Barnhart,* 399 F.Supp.2d 1240, 1251 (D.N.M. 2005).

■ This Court nevertheless finds that it has jurisdiction here. First, *Gallegos*—a brief unpublished opinion—noted that the plaintiff "[did] not argue that the ALJ failed to adhere to a legal requirement … in reaching her second, final decision, but only that the ALJ did not follow the Appeals Council's direction." *Gallegos,* 1998 WL 166064, at *2. In contrast, Mr. Gonzales has directed this Court's attention to 20 C.F.R. § 416.1477(b), which commands that the ALJ "shall take any action that is ordered by the Appeals Council." ECF No. 18 at 22. Moreover, subsequent Tenth Circuit opinions have assessed ALJs' adherence to Appeals Council remands without second-guessing the court's ability to hear these cases, suggesting that the approach in *Gallegos* is not the law of this circuit. *See, e.g., Rice v. Apfel,* No. 99–1422, 2000 WL 1701446, at *6 (10th Cir. Nov. 14, 2000); *Gardner–Renfro v. Apfel,* No. 00–6077, 2000 WL 1846220, at *2 (10th Cir. Dec. 18, 2000). For these reasons, the Court finds *Gallegos* unpersuasive and concludes that it has jurisdiction to determine whether the ALJ failed to comply with the Appeals Council's order.

Turning to the merits of this issue, it might be helpful to parse apart what exactly the Appeals Council ordered the ALJ to do. The Appeals Council directed the ALJ to "[o]btain additional evidence concerning the claimant's cognitive functioning." R. 86.[2] The ALJ was instructed to attain this evidence with the goal of com-

---

**2.** Notwithstanding *Branum v. Barnhart,* 385 F.3d 1268 (10th Cir. 2004), and *Maes v. Astrue,* 522 F.3d 1093 (10th Cir. 2008), it is immaterial that Mr. Gonzales did not request

further development of the record because the Appeals Council explicitly ordered the ALJ to take this action.

pleting the administrative record. *Id.* To that end, the Appeals Council suggested that the additional evidence *"may* include, if warranted and available," a consultative examination and other evidence about Mr. Gonzales's functional limitations. *Id.* (emphasis added).

■ The ALJ did not request a consultative examination, but he did receive more than seventy pages of additional medical records for the remand hearing. *See* R. 353–425. Among these records are Dr. Hardy's progress notes for Mr. Gonzales, which discuss the claimant's mental functioning. R. 353–56 (noting "[poor] concentration," "obvious learning issues," "no positive symptoms of thought [disorder]," "low functioning but no[t] retarded," "form of·thought is really not that disorganized," and "very distractible"). The records also contain a thorough mental status exam at ‘Parkview Medical Center, which included an assessment of Mr. Gonzales's cognitive abilities. R. 395 (noting "thought processes were coherent, logical, and goal-directed," "attention and concentration appeared adequate," "judgment appears to be limited," "alert and fully oriented," "difficulties with math," "memory was grossly intact," "thinking appears to be concrete," and "[b]ased on his use of vocabulary and abstraction ability, and fund of general knowledge his intellectual functioning appears to be borderline at best. Mental retardation should be ruled out."). Since the amended record thus reflects additional evidence of Mr. Gonzales's cognitive functioning, the Court finds that the ALJ did not violate the Appeals Council's order. [3]

## B. Dr. Brill.

Mr. Gonzales also argues that the ALJ failed to weigh Dr. Brill's opinion and explain why he did not follow it. ECF No. 18 at 24–30. I agree with this contention in part.

Dr. Brill served as a State agency psychological consultant in reviewing Mr. Gonzales's medical records and conducting a Mental Residual Functional Capacity Assessment (MRFCA). *See* R. 65–67. Under Social Security Administration regulations, ALJs "must consider findings and other opinions of State agency medical and psychological consultants ... as opinion evidence." 20 C.F.R. § 416.927(e)(2)(i). In particular:

> When an administrative law judge considers findings of a State agency medical or psychological consultant ..., the administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through (d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge *must* explain in the decision the weight given to the opinions of a State agency medical or psychological consultant....

*Id.* § 416.927(e)(2)(ii) (emphasis added).

The ALJ's decision cites Dr. Brill's opinion and summarizes most of his mental functional assessment. The ALJ then adopts Dr. Brill's opinion as fact, without suggesting anything less than full defer-

---

3. However, since this case is being remanded for other reasons described below, the Court notes *sua sponte* that the ALJ incorrectly observes in this section: "There is no evidence to support a learning disability." R. 23. Dr. Har-

dy's progress notes describe Mr. Gonzales as having "obvious learning issues." R. 353. The ALJ should address this apparent conflict in the record on remand.

ence to the doctor's view. *See* R. 25. But the discussion does not explain the weight assigned to Dr. Brill's findings. *See* R. 25. This omission facially violates 20 C.F.R. § 416.927(e)(2)(ii).

■ However, the ALJ's failure to specify the weight he gave Dr. Brill's opinion is a harmless error. Mr. Gonzales contends that the ALJ did not fully accept Dr. Brill's limitations because "Dr. Brill concluded that [Mr. Gonzales] can perform . . . work[ ] with few social demands from coworkers" while the ALJ did not find this limitation. *See* ECF No. 18 at 25. This argument misrepresents Dr. Brill's opinion.

In Section I of his assessment, Dr. Brill determined that Mr. Gonzales was "[n]ot significantly limited" in his "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." R. 66. Still, Dr. Brill noted in the MRFCA's narrative that Mr. Gonzales "will function *best* in a work-setting with few social demands (i.e., with coworkers, supervisors or the public)." R. 67 (emphasis added). Identifying the optimal work environment for a claimant does not mean

that his RFC is limited to that work setting alone. Indeed, this conclusion would conflict with Dr. Brill's earlier finding that Mr. Gonzales was "[n]ot significantly limited" in this way. Dr. Brill thus did not identify social dealings with coworkers as a limitation on Mr. Gonzales's RFC, and the ALJ's failure to say that he fully embraces Dr. Brill's actual RFC limitations did not prejudice Mr. Gonzales. *See Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) ("There is no reason to believe that a further analysis or weighing of this opinion could advance [claimant's] claim of disability. The alleged error is harmless."); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").[4]

■ Mr. Gonzales's final argument is more persuasive. He rightly points out that while the ALJ's decision summarized most of Dr. Brill's opinion, it improperly ignored the finding that Mr. Gonzales has a "moderate" limitation in his "ability to respond appropriately to changes in the work setting."[5] *Compare* R. 25, *with* R. 67.

---

4. In the interest of completeness, however, the Court requests that the ALJ explicitly indicate how much weight he affords Dr. Brill's opinion when he considers this case on remand for the issues described below.

5. Mr. Gonzales contends that the ALJ also failed to account for Dr. Brill's restriction on dealing with coworkers. ECF. No. 18 at 28. Since the Court finds that Dr. Brill's opinion contained no such restriction—as discussed above—the ALJ made no mistake here.

Additionally, Mr. Gonzales claims that the ALJ missed the moderate limitations in his "ability to perform activities within a schedule, maintain regular attendance, to be punctual within customary tolerances, to complete a normal work day and week without interruptions from psychological symptoms, and to perform at a consistent pace without an unreasonable number and length of rest peri-

ods." ECF No. 18 at 29. Although this list appears to include five functional limitations, it actually includes only two categories as they appear in Dr. Brill's MRFCA: (1) "The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and (2) "The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *See* R. 66. The Court finds that ALJ's discussion did not overlook these limitations when he observed: "[Mr. Gonzales] had moderate limitations on . . . maintaining regular attendance. . . . He had moderate limitation in his ability to complete a normal workday or workweek and preform [sic] at a consistent pace." R. 25. But again, since this case is being remanded for other reasons, the Court asks the ALJ to dis-

The Commissioner's brief has much to say about Mr. Gonzales's marijuana use, but does not even try to respond to this claim. That is revealing.

■■■ There is no denying that the ALJ erred in omitting Mr. Gonzales's moderate adaptation limitation. The case law is clear on this point. An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). In particular, "[a]ny impairment-related limitations created by an individual's response to demands of work ... must be reflected in the RFC assessment." Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *6. "[A] moderate impairment is not the same as no impairment at all." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Thus, "moderate limitations must be accounted for in an RFC finding." *Jaramillo v. Colvin*, 576 Fed.Appx. 870, 876 (10th Cir. 2014) (unpublished).

Moreover, the Court does not read the ALJ's limiting Mr. Gonzales to "unskilled" work as an attempt to incorporate this limitation. Even if this were the ALJ's intention, "[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." *Groberg v. Astrue*, 505 Fed.Appx. 763, 770 (10th Cir. 2012) (unpublished) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012)).

The ALJ's decision does not fall in an exception to this rule. This is not a case in which the ALJ explained how the claimant's mental impairment does not affect his ability to do unskilled work. *Cf. Vigil v. Colvin*, 805 F.3d 1199, 1203–04 (10th Cir. 2015). Indeed, the ALJ offered no explanation for his RFC decision at all besides reciting some of Dr. Brill's findings and stating simply that "the records ... show" Mr. Gonzales has an RFC of simple work. R. 25. And this is not a situation in which the claimant's mental limitation "could be so obviously accommodated by a reduction in skill level" that it can be left out of the RFC. *Wayland v. Chater*, Nos. 95–7029, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996). While some of the mental abilities needed for skilled work are greater than for unskilled work, this is not true for a worker's adaptability to change. *See* Program Operations Manual System (POMS) DI 25020.010B.3–4. Instead, an inability to adapt to changes in the workplace is inconsistent with the most fundamental demands of unskilled jobs. *See* Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilit[y] (on a sustained basis) to ... deal with changes in a routine work setting.").

Additionally, the ALJ was not freed from responsibility by directly adopting Dr. Brill's conclusion in Section III of the MRFCA that Mr. Gonzales can do unskilled work. Dr. Brill's Section III narrative either overlooks the moderate adaptation limitation he identified in Section I or—if he meant to address this limitation by labeling Mr. Gonzales "stress intolerant"—appears to be incompatible with that finding. *See* R. 67; Social Security Ruling

cuss the entirety of Mr. Gonzales's moderate limitations in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"—not just his ability to "maintain regular attendance."

(SSR) 85-15, 1985 WL 56857, at *4. In this situation, the ALJ cannot "turn a blind eye to moderate Section I limitations." *Carver v. Colvin*, 600 Fed.Appx. 616, 619 (10th Cir. 2015) (unpublished). As the Tenth Circuit recently observed:

> [I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding.

*Id.* Since the ALJ's RFC analysis does nothing more than recite Dr. Brill's MRFCA, it is thus not supported by substantial evidence and was decided erroneously.

Finally, unlike the ALJ's failure to announce the weight given to Dr. Brill's opinion, this omitted limitation is not a trivial oversight. The ability to "deal with changes in a routine worksetting" is one of the four most basic mental demands of unskilled work. POMS DI 25020.010A.3.a. A finding of moderate impairment "supports the conclusion that the individual's capacity to perform the activity is impaired." POMS DI 24510.063.B.2 (emphasis omitted). The Court cannot conclude that no reasonable administrative factfinder could have found that Mr. Gonzales's moderate adaptation limitation requires a more restricted RFC than "simple work with few social demands," so the ALJ's failure to mention this limitation is not a harmless error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Therefore, this case must be remanded for a proper assessment of Mr. Gonzales's RFC. Once the Commissioner has properly assessed Mr. Gonzales's RFC, the Commissioner can pose accurate hypothetical questions to the Vocational Expert at step five.

## IV. Conclusion

On remand the ALJ should address all of the moderate impairments noted in Dr. Brill's Section I findings that are not encapsulated in or are contradicted by Dr. Brill's Section III narrative. Additionally, the ALJ should explain his reasons for accepting or rejecting Dr. Brill's findings. The MRFCA does not constitute "the record" and should not be treated as such; it represents just one doctor's opinion of the evidence through January 2011.

It is not clear that correction of these errors will necessarily change the ALJ's conclusion that benefits should be denied, and thus the Court declines to award benefits at this time. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). Therefore, the decision of the Commissioner is REVERSED and REMANDED for further findings.